## IN THE SUPERIOR COURT OF SPALDING COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| RICHARD CARRUTHERS | ) |
| | ) |
|     Plaintiff | ) |
| vs. | ) |
| | ) |
| LAKEVIEW LOAN SERVICING, LLC. | ) |
| Assignee of Loan Care Servicing, Inc. via | ) |
| Mortgage Electronic Registration Systems, Inc. | ) |
| As nominee for Impac Mortgage Corp. | ) |
| Dba Cashcall Mortgage | ) |
| | ) |
| LOAN CARE SERVICING CENTER, INC. | ) |
| Dba LOAN CARE | ) |
| LOAN CARE, LLC. | ) |
| Dba LOAN CARE | ) |
| | ) CASE NO.: 19V-989 |
| | ) |
| JAMES E. ALBERTELLI, P.A. | ) |
| Dba ALBERTELLI LAW and ALAW | ) |
| | ) |
| And Unknown Conspirators, Affiliates, Agents, | ) |
| And Jane Does and Richard Roes | ) |
| | ) |
|     Defendant | ) |

### PLAINTIFF'S MOTION IN OPPOSITION TO THE ANSWER OF LAKEVIEW LOAN SERVICING, LLC AND LOANCARE, LLC AND PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS MOTION FOR JUDGMENT ON THE PLEADINGS

Comes now Richard Carruthers, pro se, the above captioned Plaintiff

and moves this Court to dismiss the Answer of the Defendants, and to dismiss the

Defendants' Motion for Judgment on the Pleadings. In support of this motion,

Plaintiff contemporaneously files its brief in support containing argument and

citation of authorities to this Honorable Court as follows.

## I.

Plaintiff shows the Court that Defendant LAKEVIEW LOAN SERVICING, LLC , and LOANCARE, LLC have failed to timely answer and have failed to open the default by filing an answer and paying court costs no later than 15 days after the date of the default. Defendant LAKEVIEW LOAN SERVICING, LLC was served personally by Sheriff's service, and proof of service was filed with the Superior Court on 11 October, 2019. Defendant LOANCARE, LLC was served personally by Sheriff's service, and proof of service was filed with the Superior Court on the same day, 11 October, 2019. Each Defendant was represented by counsel Rubin Lubin, LLC and filed tardy answer 20 November, 2019.   No payment of court costs followed within the time prescribed by law, thus Defendants did not successfully re-open default.

Owing to the fact that Defendants LAKEVIEW LOAN SERVICING, LLC and LOANCARE, LLC are in default, Plaintiff shows the Court that, Plaintiff is entitled to verdict and judgment by default as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a finder of fact. Thus, the Defendants' answer is void, and its motion for judgment on the pleadings is moot, and should also be struck.

WHEREFORE, Plaintiff requests the following relief:

   A.  Default judgment with grant of permanent injunction against the
       Defendants;

   B.  Grant of Judgment on the Motion of the Plaintiff;

   C.  Money judgment in the amount of $ 88,888;

    D.  And for such other relief as the Court shall deem appropriate.


_____

Richard Carruthers
Plaintiff, Pro Se

23 Stillwater Trace
Griffin, GA, 30223
(678) 855-5209  PHONE
(800) 385-0656  FAX

## VERIFICATION

STATE OF Georgia

County of Spalding

I Richard Carruthers, being first duly sworn, deposes and says:
I am the PLAINTIFF in the foregoing-captioned action, am personally
familiar with the facts stated in the Motion, and know same to be true,
or if stated upon belief, believe same to be true.

_____

SUBSCRIBED AND SWORN this date: _____

_____

My commission expires:                          Notary Public
=========================================================
Richard Carruthers
23 Stillwater Trace
Griffin, GA, 30223
(678) 855-5209  PHONE
(800) 385-0656  FAX
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that I have this 11th day of May, 2020 served all parties in this matter through their counsel by placing a true and complete copy in the U.S. Mail with adequate postage thereon, addressed as follows:

Attorney for Lakeview and LoanCare

Bret J. Chaness, Esquire

Rubin Lubin, LLC

3145 Avalon Ridge Place, Suite 100

Peachtree Corners, GA 30071

Attorney for Albertelli Law

Cory P. Sims, Managing Member

100 Galleria Parkway

Suite 900

Atlanta, GA 30339

## IN THE SUPERIOR COURT OF SPALDING COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| RICHARD CARRUTHERS | ) |
| | ) |
|     Plaintiff | ) |
| vs. | ) |
| | ) |
| LAKEVIEW LOAN SERVICING, LLC. | ) |
| Assignee of Loan Care Servicing, Inc. via | ) |
| Mortgage Electronic Registration Systems, Inc. | ) |
| As nominee for Impac Mortgage Corp. | ) |
| Dba Cashcall Mortgage | ) |
| | ) |
| LOAN CARE SERVICING CENTER, INC. | ) |
| Dba LOAN CARE | ) |
| LOAN CARE, LLC. | ) |
| Dba LOAN CARE | ) |
| | ) CASE NO.: 19V-989 |
| | ) |
| JAMES E. ALBERTELLI, P.A. | ) |
| Dba ALBERTELLI LAW and ALAW | ) |
| | ) |
| And Unknown Conspirators, Affiliates, Agents, | ) |
| And Jane Does and Richard Roes | ) |
| | ) |
|     Defendants | ) |

### <u>PLAINTIFF'S BRIEF IN SUPPORT OF ITS OPPOSITION TO THE ANSWER OF LAKEVIEW LOAN SERVICING, LLC AND LOANCARE, LLC AND IN OPPOSITION TO THEIR MOTION FOR JUDGMENT ON THE PLEADINGS</u>

Comes now Richard Carruthers, pro se, the above captioned Plaintiff and moves this Court to dismiss the Answer of the Defendants, and to dismiss the Defendants Motion for Judgment on the Pleadings. In support of this motion, Plaintiff contemporaneously files its brief in support containing argument and citation of authorities to this Honorable Court as follows.

## STATEMENT OF FACTS

Defendants open their brief communicating the same hubris and disparagement of the Plaintiff's causes of action without consideration of the facts viewed from an ethical or a legal framework. This arrogance has plagued the lender-borrower relationship from the onset.

At the time of filing this complaint, the Plaintiff faced an imminent unlawful non-judicial foreclosure caused by the wanton, capricious, and on-going errors in judgment and practices of the Defendants, who refused to abide by the letter and spirit of the lender-borrower agreement (the Security Deed) by actively interposing the presence of the lender between the borrower and the tax authority where the property is domiciled, notwithstanding adequate language within the lender drafted security deed to protect the Defendants from any peril, and specifically to protect against a tax lien (Complaint exhibit # 1, paragraph 4, page 5) that could take priority over the lien position of the lender. This Plaintiff alleges that Defendants' behavior constitutes a tort in violation of the rights of the Plaintiff to be free of interference in the negotiation of property tax matters with a state official.

The parties to the action forming the case at bar entered into an agreement intended to govern a residential loan transaction on improved property located at 23 Stillwater Trace, Griffin, Spalding County, GA 30223 on November 23, 2016. The residential loan was 100% guaranteed by a U.S. Government Department of Veterans Affairs guarantee.

Evidence of that lender drafted agreement, the Security Deed (complaint exhibit 1), provides for the periodic monthly payments of principal and interest,

and it requires the inclusion of payments for impounds to cover real estate taxes and home owner's insurance with payments beginning on January 1, 2017, in the monthly amount of $ 2,713.04.

On or about March 07, 2017, Plaintiff made application for homestead exemption, which was granted by the Spalding County Tax Assessor with a tax classification of L7, which resulted in a zero tax liability on the property for tax year 2017. Notice of the new tax status was delivered by Plaintiff to Defendant, refund of the tax impounds was requested, and subsequently made on or about June 08, 2017, which resulted in a new periodic monthly payment of $2247.47.

Though, homestead tax from year to year is typically automatically renewed, the Plaintiff became aware that its 2018 tax status would not be continued under the terms of the 2017 tax year zero-tax status. On June 25, 2018, Plaintiff made timely notice of appeal to the tax authority which did stay any tax due status and continued the Plaintiff in a zero-tax due status (complaint exhibit 18). There was no change with the monthly payment to the Defendants, and the lender drafted security deed does not speak to any notice requirement from borrower where no tax change is contemplated. Plaintiff had no duty to notice Defendants of the tax appeal.

On October 15, 2018, Plaintiff became aware that Defendant had pre-emptively made unsolicited payment of the disputed 2018 property taxes in the amount of $4954.38 to the detriment of the Plaintiff's tax appeal and created an escrow shortage. Plaintiff made immediate notice and demand to Defendant, that it cease its interference between the Tax Assessor and Plaintiff—the tort.

Plaintiff continued to make, and Defendant continued to accept the periodic monthly payments in November 2018 that did not include an impound for real estate taxes. The December 2018 monthly payment without impound for real estate taxes was tendered by Plaintiff to Defendant, but was not properly credited, though it was applied in January 2019 in incorrect accounting amount and in variance to the Security Deed. Though, Plaintiff has steadfastly noticed Defendant of the payment accounting dispute, Defendant, in contravention to the terms of the Security Deed has refused to correct the issue.

On February 11, 2019, Plaintiff became aware that Defendant had pre-emptively made a second unsolicited payment of the disputed 2018 property taxes in the amount of $4803.76, again to the detriment of the Plaintiff's tax appeal and increasing the escrow overdraft. Plaintiff made immediate notice to Defendant, including demand to Defendant that it cease its interference between the Tax Assessor and Plaintiff—the tort.

Plaintiff from January 2019 thru June 2019 has made copious volume of communication with Defendant to correct all payment disputes, to no avail. (complaint exhibit 2.) Defendant has acted with bad faith to coerce Plaintiff into making payments to Defendant including an impound for real estate taxes which are not due and owing by Plaintiff, in contravention to the terms of the Security Deed. (complaint exhibit # 1, p. 1-13).

Continually, Defendants have made visits to the property comprised of actual physical trespasses, and threatening drive-bys that violate the quiet enjoyment of the subject property, unnerve the Plaintiff's family, and cause the

Plaintiff disgrace and embarrassment within the family as Plaintiff is shown to be powerless to stop these assaults.

## I.

Plaintiff shows the Court that Defendant LAKEVIEW LOAN SERVICING, LLC , and LOANCARE, LLC have failed to timely answer and have failed to open the default by filing an answer and paying court costs no later than 15 days after the date of the default. Defendant LAKEVIEW LOAN SERVICING, LLC was served personally by Sheriff's service, and proof of service was filed with the Superior Court on 11 October, 2019. Defendant LOANCARE, LLC was served personally by Sheriff's service, and proof of service was filed with the Superior Court on the same day, 11 October, 2019. They initially appeared at a rule NISI hearing held on October 21, 2019 where each was represented by Danielle Weit, of Albertelli Law. On information and belief Defendants Lakeview and LoanCare became subsequently represented by counsel Rubin Lubin, LLC and filed tardy answer 20 November, 2019.  No payment of court costs followed within the time prescribed by law, thus Defendants did not successfully re-open default.

Pursuant to O.C.G.A. 9-11-55 (2010) 9-11-55. Default judgment. (a) When case in default; opening as matter of right; judgment. If in any case an answer has not been filed within the time required by this chapter, the case shall automatically become in default unless the time for filing the answer has been extended as provided by law. The default may be opened as a matter of right by the filing of such defenses within 15 days of the day of default, upon the payment of costs. If the case is still in default after the expiration of the period of 15 days, the plaintiff at any time thereafter shall

be entitled to verdict and judgment by default, in open court or in chambers, as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a jury, unless the action is one ex delicto or involves unliquidated damages, in which event the plaintiff shall be required to introduce evidence and establish the amount of damages before the court without a jury, with the right of the Defendant to introduce evidence as to damages and the right of either to move for a new trial in respect of such damages; provided, however, in the event a Defendant, though in default, has placed damages in issue by filing a pleading raising such issue, either party shall be entitled, upon demand, to a jury trial of the issue as to damages. An action based upon open account shall not be considered one for unliquidated damages within the meaning of this Code section.

Owing to the fact that Defendants LAKEVIEW LOAN SERVICING, LLC and LOANCARE, LLC are in default, Plaintiff shows the Court that, Plaintiff is entitled to verdict and judgment by default as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a finder of fact. Thus, the Defendants' answer is void, and its motion for judgment on the pleadings is moot, and should also be struck.

## II.

The Defendants claim that Plaintiff is in default under the terms of the Security Deed authorizing foreclosure by the lender. Plaintiff disputes the position of the Defendants, denies the claimed default, and counters asserting

that it has made tender of an amount at each periodic payment that includes principal, interest, and insurance. The tax portion, which was not due, nor disputed between the lender and borrower since June 2018 was not included by mutual agreement resultant from the award of an L7--zero tax status in 2018. Plaintiff points to the fact that the lender actually refunded the excess escrow on borrower request in June 2018. Thus, a continuation of payments without real estate tax escrow was the agreement of the parties, though no modification or other writing was requested, executed, or contemplated by either party as the terms of the Security Instrument were being followed.

Plaintiff shows the Court that the Security deed was drafted by the Defendant and is subject to the legal concept *contra proferentem*. **Contra proferentem** (Latin: "against [the] offeror"), also known as "interpretation against the draftsman", is a doctrine of contractual interpretation providing that, where a promise, agreement or term is ambiguous, the preferred meaning should be the one that works against the interests of the party who provided the wording. The doctrine is often applied to situations involving standardized contracts or where the parties are of unequal bargaining power, but is applicable to other cases. (American Law Institute 1981, § 206, comment. b)

The security deed (complaint exhibit # 1, p. 4) at paragraph 3 says,

"Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of **amounts due** for: (a) taxes and assessments and other items that can attain priority over this Security Instrument as a lien or encumbrance on the Property... " (emphasis supplied).

In pleadings found at (complaint exhibit # 4, p. 20), Plaintiff shows the Court that per the tax authority, "There will be no taxes due until the (the tax matter) is resolved."

It follows that if no taxes are due, a default predicated upon an amount not due and owing cannot attain priority over the Security Instrument as a lien or encumbrance on the Property. Nor can any theory be presented that non-payment of an item that was not due in the previous period, not due in the current period, and arguably not due in the upcoming period could form the basis of a default under the note or under the Security Instrument. The Plaintiff was **not** in default because **no taxes were due**, notwithstanding the claims of the Defendants otherwise.

**TORTIOUS INTERFERENCE.**

Defendants alternate between asserting privity to the contract between the tax authority and Plaintiff (a tacit admission), and making the assertion that no contract or relationship exists between the tax authority and the Plaintiff. Plaintiff shows the Court that the contract between the tax authority and the Plaintiff is codified by law. The Defendants argue that Plaintiff has no foundational basis to invoke a claim of tortious interference against these Defendants claiming privilege. They cite <u>Dalton Diversified, Inc. v. AmSouth Bank</u>, 270 Ga App. 203, 209, 606 S.E. 2d 892, 898, (2004). In the Dalton case AmSouth Bank, the Defendant held a well perfected security interest that as its predicate was established to receive and fund third party invoices. As a necessity to this contractually agreed on-going performance, AmSouth had certain well

documented rights which the court found established AmSouth's "privilege," which barred a claim of tortious interference.

In this case, however, the Security instrument does –not—carve out any rights permitting the lender to intervene between the tax authority and the Plaintiff. Again, raising the concept of *contra proferentem,* the drafter of the Security Instrument in this case could have specified a right to communicate, negotiate, defend, abrogate, etc. all homestead tax matters. It did not.

Instead, the contract—the Security Instrument specifies what actions the Lender and Borrower may take with each other should a matter between the tax authority and the borrower develop that could attain lien priority over the first lien of the Defendants. Defendants have only successor rights pursuant to a tax default after proper notice to the borrower.

Defendants have no contract rights, or privilege with the tax authority, absent a failure by borrower under the Security Instrument. Per the Security Instrument (Complaint exhibit #1, paragraph 4, p.5), the lender must give notice of a tax default by borrower resulting in a lien that would take priority remaining uncured for ten (10) days before borrower could be declared in default. This is hardly a position of privilege. A *contra proferentem* analysis affirms that these Defendants are strangers, without privilege unless and until the borrower abrogates its duty by failing to pay or defend the first lien of the Defendants. The Security Instrument never carves out a right for the Defendants to act in the borrower's stead. The remedies are those defined by default, not substitution.

The tax authority did not send a bill for past due taxes to the lender nor to the borrower because no taxes were due. Yet the lender inserted itself into the

relationship between the tax authority and the borrower, to the detriment of the borrower's tax appeal. Defendants' acts did jeopardize the ability of the Plaintiff to pay its fair tax, maintain the property, and retain the property without slander to its title, as the Defendants did actually proceed to foreclosure. The Plaintiff was harmed by the acts of the Defendants.

The Security deed is contract A-B between lender and borrower. The contract B-C is the contract between borrower and tax authority. There is to interwoven A-B-C contract between the parties as Defendants suggest, nor an A-C agreement, either. The analysis is easily proven by simply removing the lender held escrow, and the operations between all parties are unaffected, except to remove the Defendants' proclivity to interfere. Notice, the pleadings (complaint exhibit #6, p. 22) show that there is no legal requirement for lender held escrow under this loan. It would seem these Defendants mistake themselves as property owners renting real estate to tenants, instead of lenders lending funds to borrowers. The motives for Defendant's actions, likely myriad, are outside the present purview of this Plaintiff's discussions herein.

Defendants state they had no notice of Plaintiff's tax appeal. Yet the pleadings (complaint exhibit # 2, p. 14) show that the Defendants were noticed on October 16, 2018 the morning after the first interference. Interestingly, in mitigation by Plaintiff, a visit to the tax authority that same day resulted in the tax authority agreed to, and  placing the uncashed check of the Defendants into processing suspense in accord with the law governing tax appeals in Spalding County.

The pleadings show (complaint exhibit # 2, p. 14) that subsequent to notice, the Defendants again interfered on February 11, 2019 and were again noticed by Plaintiff, to no avail. This created a further escrow account shortfall, giving rise to the Defendants' misplaced and misguided foreclosure actions against this Plaintiff.

All Georgia citizens are in contract with the appropriate jurisdictional authority by virtue of the laws and Constitution of the State and the nation. Unless a third party is processing a claim between itself and the legal authority pursuant to contract, any interference giving rise to a harm is likely a tort. where both the citizen and the jurisdictional authority each has the duty to follow the law, and the procedures thereunder. In the case of real estate homestead, the Plaintiff has a duty to contribute its fair share of revenue to the real estate authority, and the real estate authority has the duty to collect the amount legally required of the Plaintiff. At minimum, that is a business analogous relationship. Citizens pay for services and the jurisdictional authority provides service outputs for those payments. The outputs in this case include police protection, fire protection, code enforcement, and notice to the world of the property rights that the Plaintiff has acquired. In turn, the cost for this bundle of outputs is determined by a published formula decided by the legislature and its actors. This is not dissimilar to purchase of utilities, which are regulated by a jurisdictional authority.

However, given a trial, the Plaintiff is confident it can prove the motives of these Defendants, and every element of tortious interference in this case to the satisfaction of the Court where the Plaintiff asserts it would prevail at trial.

**BREACH OF CONTRACT**

Plaintiff asserts its claim of breach based on the legal duty of Defendants to accurately account, credit, and account for periodic payments as set out in the contract and their refusal or their inability to do so. Defendants erroneously state that a unilateral modification of periodic payments is attempted by Plaintiff. That is categorically false. All payments made by Plaintiff in all the months from loan inception thru December 1, 2018 were the mutually agreed sum. On or about December 01, 2018, Defendants made departure from timely acceptance of the periodic payment and failed to apply the payments in conformity to the Security instrument. The pleadings (complaint exhibit 1, paragraph 2, p. 4) states that ...

[A]ll payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the NOTE; (b.) principal due under the Note; (c.) amounts due under Section 3.

In the case at bar, Plaintiff contends the lender is prohibited from refusing the payments of the borrower if tendered in amount sufficient to pay (a.) interest and (b.) principal. The lender may say not true, but based on the contract language the answer is either as the Plaintiff asserts, or the answer is ambiguous. In either scenario, because the Defendants drafted the agreement, its interpretation is subject to resolution under the concept of *contra proferentem*. By extension, any refusal where a payment adequate to cover principal and interest, yet rejected by the lender is a breach, and shows wanton and capricious disregard for contract law.

The Plaintiff contends that the lender must first apply all periodic payments in this -- a,b, c -- order, and  had Defendants not breached this provision, an acceleration would have been remote, if not impossible. The lender would have seen that his duties under the Security Instrument would have been to collect any past due escrow for taxes and insurance over 12 months (Complaint exhibit #1, p.5), but not institute foreclosure procedures. Since a tax bill would have revealed that no taxes were currently due, there could have been no escrow shortage, and again, no foreclosure proceedings would have been indicated.

Powers of sale in deeds...shall be strictly construed, and shall be fairly exercised. O.C.G.A. 23-2-114. The actions of the Defendants are blatantly unfair under the facts and the circumstances of this case and demonstrate a breach of contract.

Plaintiff is grievously damaged by Defendants' breach. What remains unresolved is an understanding of the motives that drove Defendants in this course of action. Jettisoning the philosophical arguments at this time, Plaintiff should have its chance at trial to prove all elements of the breach, and damages.

## BREACH OF THE COVENANT OF GOOD FAITH

Unlike the facts Defendants rely on in Ceasar v.Wells Fargo Bank, N.A. 322 Ga App. 529, 533, (2) (c ), 744 S.E.2d 369 (2013) where a naked claim of breach of good faith and fair dealing was asserted,  the claim of breach of good faith and fair dealing in this case is well supported by a plethora of evidence made in these pleadings. As foundation, Plaintiff points to the Security Instrument, which shows great specificity in borrower required acts, yet displays equally great vagueness, ambiguity, and latitude bordered by capriciousness governing lender

acts, coupled with behaviors that are minimal burdens upon the lender, yet have great worth to the borrower. An impartial finder of fact must be struck by this dichotomy.

On information and belief, the periodic monthly statements from lender to borrower have been re-directed away from the mail address of borrower to the mail address of Defendant's agent Albertelli Law, care of Cory Sims, Esquire in an effort to thwart Plaintiff's ability to perform its duties under the Note, the Security Instrument, and under the Deed. Such bad acts cannot be considered as good faith or fair dealing. At no place in any writing is the lender permitted to divert the periodic notices due borrower from the address of notice.

Powers of sale in deeds...shall be strictly construed, and shall be fairly exercised. O.C.G.A. 23-2-114. The actions of the Defendants are massively unfair under the facts and the circumstances of this case and support Plaintiff's contention of breach of the covenant of good faith and fair dealing.

Under OCGA § 9–11–12(b)(6), a motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

As set out above, the plain meanings contained in the lender authored Security Instrument gave the Defendants every protection imaginable against virtually defenseless borrowers in Georgia. Thus, the motives at play in the minds of the Defendants scream out for an answer, and must be addressed.

It seems to this Plaintiff, that these Defendants entered the lender-borrower relationship with only the objective of bettering the lender's financial position at the expense of the borrower by collecting (late) fees, holding non-interest bearing escrow balances, and ultimately conscripting rapidly rising equity balances by engaging in a practice of equity stripping Georgia real estate owners with the impunity provided by OCGA 44-14-162, et. seq.

This Plaintiff has shown by the sum of the pleadings and in this response that the conflict between the parties was readily remedied well short of court action. The power to avoid this problem rested upon one lender decision—accept payment without impounds for real estate taxes --provably not due. Yet, the hubris of these Defendants reveal that they have no regard for the little people that form the clientele that they lend to, though in Georgia law, they have no such duty.

The claim of breach of good faith and fair dealing is well supported by a plethora of evidence made in these pleadings. Its foundation is the Security Instrument which shows great specificity in borrower required acts, yet displays equally great vagueness, ambiguity, and latitude bordered by capriciousness governing lender acts. There is –**no**—legal basis to require a lender held escrow on a VA loan. What there is, is the formidable stick of OCGA 44-14-162, et. Seq held at the 60-day ready to club the consumer life out of any Georgia purchase

money borrower that does not dance to the music of lenders of the ilk of these Defendants and their assassin trained attorneys.

OCGA 44-14-162, et. seq., the non-judicial foreclosure statute, substitutes private remedy pursuant to contract terms, for that of a thoughtful, educated, principled jurist who applies the laws to the facts of each case. The legislature believed that similarly principled parties operating as lenders could be trusted to carry out the same judgments as would impartial jurists hearing the facts of the case and applying the applicable law, yet the rise of predatory lending has been a too often result of the legislative latitude permitted in Georgia non-judicial foreclosure law.

It is attractive to lenders of poor character to operate in a state where they can speedily foreclose with little notice or legal limitation. The reality is the lender decisions are not often made by people of the caliber envisioned by the legislature. The decisions are often made by overworked clerks, sometimes heady, even haughty, with the power that their position brings to the consumer marketplace and the intimidation / coercion power attendant thereto. (complaint exhibit #7, p. 23-24).

Notice that the power to avoid this problem rested upon one lender decision—to accept a payment without impounds for real estate taxes. The bad decision was compounded by a breach of the terms of the Security Instrument by the lender, without fear of redress because the lender could always invoke OCGA 44-14-162, et. seq. The Security Deed permitted this saving action by waiver or modification (Complaint exhibit #1, paragraph 3, p.4). The VA guarantee terms permitted this by directive since 2004 (Complaint exhibit #1, p.22). Yet these

lenders found that the property on the Security Deed was worth at least $ 600,000, an amount guaranteeing a windfall profit to the lender if foreclosed, lender knocked off, and subsequently resold quickly post foreclosure.

This loan poses no risk to the lender, because it has a 100% VA guarantee. There was never a reason to force the borrower out of their family home, but for the chance to earn a windfall foreclosure profit, while also collecting a guaranteed principal collection from the US Government Department of Veteran's Affairs. As a business model, it has few flaws. However, as literature reminds, all the great men of antiquity had but a single flaw, yet the single flaw was sufficient to prove their undoing, and fate them to demise and failure.

## WRONGFUL FORECLOSURE

Defendants assert a consistent position denying the facts of this case. Plaintiff has continually tendered the monthly payment amount last accepted between the parties--$ 2247.47. This amount includes principal, interest, and escrow for the homeowners' insurance. It did not include payment for a sum only imagined—the zero real estate property tax. It is clearly plead that no taxes are due per (complaint exhibit #4, p. 20).

Thus, any action based on an amount not due is erroneous. For the Plaintiff to pay an estimate would only give rise to a view that Plaintiff had ratified a known falsity. That a lender would persist in the costs and time wasted in pursuit of a foreclosure against a party ready, willing, and able to pay is driven by a logic that escapes this Plaintiff.

It is nothing short of equitable to pay the last amount mutually agreed between the parties. The lender could only be benefitted by continuing to accept

the last agreed payment amount, while retaining the considerable latitude afforded by the terms contained in the Security Instrument. This is true, unless... there is some ulterior motive.

The Plaintiff's complaint for wrongful foreclosure is based on the lender taking every act to foreclose, however being blocked by the courts and the presence of the Plaintiff at the courthouse steps where the Defendants deployed their title agent—Mike Maranello of Traditional Title, 678 895-2739 to foreclose the property of Plaintiff on November 05, 2019, notwithstanding having more than 15 days notice that the sale was enjoined. But for the physical presence of the Plaintiff, the wrongful foreclosure would have been completed.

The Court should take notice of this Defendant behavior and sanction them for ignoring an Order of the Court. The property shows it was foreclosed in the credit bureau. Thus, the Defendants have done all but collect the foreclosure sale funds which would make their foreclosure complete.

Diligent search having been made, Georgia law appears to be silent on tender. "Refusal of tender under the common law had certain legal effects. A tender of payment may be defined as "an unconditional offer by a debtor or obligor to pay another, in current coin of the realm, a sum not less in amount than that due on a specified debt or obligation."' Tender of payment typically arises within the law of commercial paper when a party obligated on a negotiable instrument, at its maturity date, tenders the sum due to the holder. If tender is refused, and the holder subsequently brings suit to collect on the obligation, the party obligated may assert the prior tender as a defense to liability for interest, costs, and attorney's fees accruing on the instrument after the effective date of the

tender. Article Three of the Uniform Commercial Code (Code) has codified a tender of payment rule for commercial paper in section 3-604:

(1) Any party making tender of full payment to a holder when or after it is due is discharged to the extent of all subsequent liability for interest, costs and attorney's fees.

(2) The holder's refusal of such tender wholly discharges any party who has a right of recourse against the party making the tender.

(3) Where the maker or acceptor of an instrument payable otherwise than on demand is able and ready to pay at every place of payment specified in the instrument when it is due, it is equivalent to tender. Tender of payment under U.C.C. Section 3-604.

Pursuant to O.C.G.A. 23-3-2 and O.C.G.A. 23-3-3 Plaintiff proffers U.C.C. Section 3-604 as foundation for its argument, asserting that if U.C.C. Section 3-604 was properly plead and admitted for the purpose, herein, the position of the Plaintiff would readily be seen to conform to law based on a far older, virtually forgotten set of rules than those typically applied to real estate disputes in Georgia at this time.

Plaintiff asserts that estoppel is barred by equity, and that Plaintiff approaches the Court with "clean hands" seeking equitable relief.

**FAIR DEBT COLLECTION PRACTICES ACT—**

**FDCPA 15-USC 1692 et seq.**

**and**

**Negligent Infliction of Emotional Distress**

Page **28** of **33**

The Plaintiff, hereby adopts by reference the enumeration of acts contained in the pleadings that form its claim of violation of the FDCPA. Plaintiff asserts these violations as a bar against foreclosure, as evidence of breach of contract, breach of the covenant of fair dealing, as grounds for damages sustained by Plaintiff, and asserts these claims against all named Defendants.

The Plaintiff makes request for leave of the Court to introduce foreign law at the time of trial to meet the burden of pleading the FDCPA claims raised in the initial pleadings.

Plaintiff also shows the Court that on information and belief, the periodic monthly statements from lender to borrower have been re-directed away from the mail address of borrower to the mail address of Defendant's agent Albertelli Law, care of Cory Sims, Esquire, a further act in violation of the FDCPA.

At this time, Plaintiff points to his request for preservation of this cause of action for trial, where Plaintiff will prove all necessary elements with the specificity and the thoroughness required to prevail at trial in a court of law.

The same request for preservation of the cause of action regarding the Negligent Infliction of Emotional Distress claim is hereby made to the Court. Plaintiff will prove all elements with the specificity and thoroughness required to prevail in a court of law at trial.

Under OCGA § 9–11–12(b)(6), a motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce

evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

Monthly, Defendants have made visits to the property comprised of actual physical trespasses, and threatening drive-bys that violate the quiet enjoyment of the subject property, unnerve the Plaintiff's family, and cause the Plaintiff disgrace and embarrassment within the family as Plaintiff is shown to be powerless to stop these assaults. Plaintiff is faced with the choice of erecting physical barriers to safeguard his family from these harms executed by the Defendants.

Plaintiff adopts the totality of its pleadings and asserts that the pleadings of record present a colorable claim that meets the survivability tenets above plead. For the numerous reasons made, the motion of Defendants should stand denied as they have been unable to meet the test required under the law.

## CONCLUSION

The Plaintiff has shown a plethora of acts by the Defendants that have injured the Plaintiff. All of which will be proven at trial under the rules that permit both sides to distill the truth of the matter for the factfinder to determine a fair, legal , and ethical outcome. The Plaintiff begs the Court's indulgence with its lay presentation, and urges that the entire pleadings be examined to inform the Honorable Court of the facts and merits that the Plaintiff asserts herein.

No party, however much moneyed, should be permitted to trample over those who approach it in a fair bargain for use of funds, at the cost established by the moneyed party, on terms permitting repayment of those funds within the bounds ascribed by law as fair.

The Plaintiff humbly asks for the protection of the Court by making judgment and award in this case in favor of Plaintiff on all counts.

WHEREFORE, Plaintiff requests the following relief:

A. Default judgment on Defendants with grant of permanent injunction against the Defendants;

B. Dismissal of Defendants motion;

C. Judgment for Plaintiff on the pleadings;

D. That order issue modifying the Security Instrument removing the Lender right to collect periodic payments for tax escrow as an act constituting default if not paid by Borrower;

E. Money judgment in the amount of $ 88,888;

F. And for such other relief as the Court shall deem appropriate.

_____

Richard Carruthers
Plaintiff, Pro Se

23 Stillwater Trace
Griffin, GA, 30223
(678) 855-5209  PHONE
(800) 385-0656  FAX

## <u>VERIFICATION</u>

STATE OF Georgia

County of Spalding

I Richard Carruthers, being first duly sworn, deposes and says:
I am the PLAINTIFF in the foregoing-captioned action, am personally
familiar with the facts stated in the Motion, and know same to be true,
or if stated upon belief, believe same to be true.

SUBSCRIBED AND SWORN this date: 5 - 11 - 2020

My commission expires: Sept 14, 2020   Notary Public
=====================================================
Richard Carruthers
23 Stillwater Trace
Griffin, GA, 30223
(678) 855-5209  PHONE
(800) 385-0656  FAX
Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that I have this 11th day of May, 2020 served all parties in

this matter through their counsel by placing a true and complete copy of

**<u>PLAINTIFF'S MOTION IN OPPOSITION TO THE ANSWER OF
LAKEVIEW LOAN SERVICING, LLC AND LOANCARE, LLC
AND
PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS MOTION
FOR JUDGMENT ON THE PLEADINGS</u>**

in the U.S. Mail with adequate postage thereon, addressed as follows:

Attorney for Lakeview and LoanCare

Bret J. Chaness, Esquire

Rubin Lubin, LLC

3145 Avalon Ridge Place, Suite 100

Peachtree Corners, GA 30071


Attorney for Albertelli Law

Cory P. Sims, Managing Member

100 Galleria Parkway

Suite 900

Atlanta, GA 30339